```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                            :
SOUTHERN OIL OF LOUISIANA INC.                              :
AND SOUTHERN OIL OF LOUISIANA                               :
LLC,                                                        :
                                                            :
                                                            :   19-CV-9622 (VSB) (DCF)
                        Plaintiffs,                         :
                                                            :     OPINION & ORDER
            v.                                              :
                                                            :
                                                            :
                                                            :
ALI SABERIOON,                                              :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------X
```

Appearances:

Christopher J. Clark
Latham & Watkins LLP
New York, New York
*Counsel for Plaintiffs*

Alexander Chae
Foley & Lardner LLP
Houston, Texas
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me are the motions filed by Defendant Ali Saberioon ("Defendant" or "Saberioon") to dismiss the Amended Complaint for Declaratory Judgment ("Amended Complaint") filed by Plaintiffs Southern Oil of Louisiana Inc. and Southern Oil of Louisiana LLC (collectively, "Plaintiffs") for (1) lack of personal jurisdiction, (2) improper venue, and (3) failure to state a claim. Because I find that I do not have personal jurisdiction over Defendant, and that, in any event, Plaintiffs have failed to state a claim for relief, Defendant's motions to dismiss for lack of personal jurisdiction and for failure to state a claim are hereby GRANTED.

Defendant's motion to dismiss for improper venue is hereby DISMISSED as moot.

I. **<u>Factual Background</u>**[1]

In September 2019, Biglari Holdings Inc., through its wholly owned subsidiary Southern Oil Inc., purchased Upstream Exploration Holding LLC and, as a result of the purchase, became the owner of Upstream Exploration LLC, the wholly owned subsidiary of Upstream Exploration Holding LLC (collectively, "Upstream Entities" or "Upstream Assets"). (Am. Compl. ¶ 13.)[2] At the time of sale, the Upstream Entities were registered in New York and had been marketed in connection with the sale by Seaport Global Securities LLC ("Seaport Global"), an investment bank registered and headquartered in New York. (*Id*. 2, ¶ 8.)

After the acquisition, Upstream Exploration Holdings LLC changed its name to Southern Oil of Louisiana Inc., which is the entity that filed this lawsuit. (*Id.* ¶ 10; *see also* MTD Opp. 2.)[3] Southern Oil of Louisiana Inc. is a Delaware corporation with its principal place of business in Louisiana. (Am. Compl. ¶ 1.) Other than Southern Oil of Louisiana Inc., Southern Oil Inc. does not have any other source of income or own any assets that could generate a profit. (*Id.* ¶ 14.) Upstream Exploration LLC also changed its name and is now Southern Oil of Louisiana LLC, the other plaintiff in this action, and a wholly-owned subsidiary and sole member of Southern Oil of Louisiana Inc. (*Id.* ¶¶ 2, 14.) It is a Delaware limited liability company with its principal place of business in Louisiana. (*Id.* ¶ 2.) Together, Plaintiffs Southern Oil of Louisiana

---

[1] The facts contained in this section are based upon the factual allegations set forth in Plaintiff's Amended Complaint. I assume the allegations therein to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiffs' Amended Complaint filed on January, 10, 2020. (Doc. 14.)

[3] "MTD Opp." refers to Plaintiff's memorandum of law in opposition to Defendants' motion to dismiss the Amended Complaint filed on February 21, 2020. (Doc. 21.)

Inc. and Southern Oil of Louisiana LLC own and operate oil and gas wells.[4]  (*Id.* ¶ 10.)

Non-party Sardar Biglari is the founder, chairperson and Chief Executive Officer ("CEO") of Biglari Holdings Inc. (Am. Compl. ¶ 9.) Prior to purchasing the Upstream Assets himself, Biglari attempted to purchase the Upstream Assets in a joint venture with Saberioon. (*Id.* ¶ 13; *see also* MTD Opp. 2.) Saberioon is "the President and [CEO] of Sabco Oil and Gas and resides in Texas."[5]  (*Id.* ¶ 3.) Saberioon became aware of this opportunity from a professional contact at HPS Investment Partners, LLC ("HPS"), then the owner and seller of the Upstream Assets. (*Id.* 1, ¶ 12; *see also* MTD Opp. 1.) HPS is registered and headquartered in New York. (*Id.* ¶ 1.) Before he reached out to Biglari, Saberioon had approached another entity with the intent to pursue a joint venture in order to purchase the Upstream Assets. (*Id.* ¶ 12.) During this earlier process, Defendant met with Brett Pertuz, a representative from HPS, in New York to discuss the prospective deal. (*Id.*) However, Defendant's effort to pursue a joint venture with this other entity failed, and he subsequently came to Biglari for help. (*Id.* 1, ¶¶ 12–13; *see also* MTD Opp. 4.) However, Defendant's collaboration with Biglari also failed, and Biglari eventually acquired the Upstream Assets without Defendant's participation. (*Id.* ¶ 13.)

Neither Saberioon nor his company were parties to or involved in the closing of Biglari's purchase of the Upstream Assets. (*Id.* ¶ 14.) However, Defendant alleges that he and Biglari had reached an agreement regarding his rights and interests in Southern Oil, Inc. (*Id.*) Specifically, on September 17, 2019, Saberioon sent an email to Biglari's attorney, indicating

---

[4] Defendant states, and Plaintiffs do not dispute, that these oil and gas wells are located in Texas and Louisiana. (Def. MTD-1 ¶ 38; *see also* Def. Aff. ¶ 3.) ("Def. MTD-1" refers to Defendant's memorandum of law in support of his motion to dismiss under Rule 12(b)(2) filed on January 24, 2020, (Doc. 16-1); "Def. Aff." refers to Defendant's affidavit filed with his motion to dismiss, (Doc. 16-4).)

[5] The Amended Complaint refers to Sabco Oil and Gas and Sabco Energy, LLC without explaining how, if at all, these entities are related.

that he and Biglari were "in agreement on the major points of the equity and employment deal subject to both definitive documentation and agreement on the finer points[.]" (*Id.* ¶ 17; *see also id.* Ex. A.)  The alleged agreement, if formalized, would entitle Defendant to become the CEO of Southern Oil Inc. and have an annual salary of $300,000.  (*Id.* ¶ 16; *see also id.* Ex. A.) Defendant also claimed that Biglari agreed to grant him a number of favorable terms that would have a direct impact on the operation of Southern Oil of Louisiana Inc. and Southern Oil of Louisiana LLC (then the Upstream Entities), including that the President of Upstream Exploration LLC would directly report to Saberioon.  (*Id.* ¶ 16.)  Defendant's requests, if granted, would give him automatic control over Plaintiffs.  (MTD Opp. 6; *see also* Am. Compl. ¶ 14.)

Plaintiffs now bring this action against Defendant, denying the existence of an agreement between Saberioon and Biglari, and requesting declaratory judgment that (1) Plaintiffs have not breached any purported contract or quasi contract between Plaintiffs and Saberioon, and (2) Saberioon has no contractual or equitable rights in Plaintiff's assets based upon the September 17, 2019 email.  (*Id.* 9.)

## II. **Procedural History**

Plaintiffs filed a complaint on October 17, 2019.  (Doc. 1.)  Defendant filed a motion to dismiss the complaint for (1) failure to state a claim, (2) improper venue and (3) lack of personal jurisdiction on December 20, 2019.  (Doc. 10.)  Defendant filed his answer to complaint on the same day.  (Doc. 12.)  On January 10, 2020, Plaintiffs filed their Amended Complaint.  (Doc. 14.)  On January 24, 2020, Defendant filed a motion to dismiss the Amended Complaint on the same grounds as stated in the motion to dismiss the complaint, and filed his answer to the Amended Complaint on the same day.  (Docs. 16, 18.)  Plaintiffs filed their opposition to the

4

motion to dismiss on February 21, 2020, (Doc. 21), and Defendant filed his reply on February 28, 2020, (Doc. 24).

### III.     Legal Standards

#### A.  *Rule 12(b)(2)*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). However, a court may "turn[] directly to personal jurisdiction" to dismiss an action where it faces "a straightforward personal jurisdiction issue" that "present[s] no complex question of state law." *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). Moreover, "[a]lthough [courts] traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues" on the merits. *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) (citation omitted).

A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902

5

F.2d 194, 197 (2d Cir. 1990)).  Prior to an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction exists.  *Id.* at 84–85; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists.") (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).  This showing may be made through materials outside the pleadings, such as affidavits submitted by parties.  *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

Where the court considers pleadings and affidavits alone, instead of holding an evidentiary hearing, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).  Plaintiff's averments "must be taken as true to the extent they are uncontroverted by the defendant's" submissions.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)).  The court, however, "will not draw argumentative inferences in the plaintiff's favor, nor must [a court] accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714 F.3d at 673 (internal citations and quotation marks omitted).  If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."  *Seetransport Wiking*, 989 F.2d at 580 (citation omitted).

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering a motion to dismiss, the court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### IV. <u>Discussion</u>

#### A. *Defendant's Motion to Dismiss Under Rule 12(b)(2)*

Whether a foreign defendant can be sued in a federal court "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (en banc)).  In assessing whether personal jurisdiction exists, courts "engage in a two-part analysis, first

determining whether there is a statutory basis for exercising personal jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10 CIV. 5762 PAE, 2013 WL 489020, at *7 (S.D.N.Y. Feb. 8, 2013), *vacated and remanded on other grounds*, 801 F.3d 92 (2d Cir. 2015)).

Therefore, I will apply New York law in considering the issue of personal jurisdiction. *See Metro. Life Ins. Co.*, 84 F.3d at 567. In New York, personal jurisdiction can be based on "general jurisdiction" under N.Y. C.P.L.R. § 301 or "long-arm jurisdiction," also known as specific jurisdiction, under N.Y. C.P.L.R. § 302. *See Noval Williams Films LLC v. Branca*, 128 F. Supp. 3d 781, 786 (S.D.N.Y. 2015). Here, Plaintiffs do not assert that I have general jurisdiction over Defendant, (*see* MTD Opp. 9 "Plaintiffs have satisfied both New York's long-arm statute and the constitutional requirement."); therefore, I only need to examine whether long-arm jurisdiction exists over Defendant under § 302. For the reasons that follow, I find that it does not.

### 1. New York's Long-Arm Statute

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary" that "transacts any business within the state or contracts anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1). Jurisdiction can be established if the cause of action "arises out of" the transacted business, *i.e.* "if there is an 'articulable nexus' or a 'substantial relationship' between the claim asserted and the activities that occurred in New York." *Fashion Fragrance & Cosms. v. Croddick*, No. 02 CV 6294(WK), 2003 WL 342273, at *14 (S.D.N.Y. Feb. 13, 2003) (citing *Bank Brussels*, 171 F.3d at 787). Moreover, the court needs to examine whether the defendant has "purposefully availed itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws, such that the defendant should reasonably anticipate being haled into court there.'" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (alteration marks omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)); *see also id*. at 247 ("New York decisions thus, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes purposeful availment of the privilege of conducting activities within the forum State[.]") (internal quotation marks omitted).  Courts "evaluate the quality and nature of the defendant's contacts with the forum . . . under a totality of the circumstances test." *Licci*, 732 F.3d at 170 (internal quotation marks omitted).  It is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff" with the forum to establish long-arm/specific jurisdiction.  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475).

Here, Plaintiffs claim that C.P.L.R. § 302(a)(1) applies to Defendant because "Defendant's attempt to insert himself into and benefit from this transaction is clearly related to and grows out of business transacted in New York."  (MTD Opp. 9.)

In an apparent attempt to connect their cause of action to Defendant's purported business transaction in New York, Plaintiffs lump a series of events together so as to suggest a single "transaction."  (*See* MTD Opp. 9–10).  These events include:  (1) Defendant's contact with HPS, including the meeting with Pertuz that took place in New York; (2) Seaport Global's marketing of the Upstream Assets; (3) Biglari's acquisition of the Upstream Assets from HPS; and (4) Defendant's current effort to "insert himself and benefit from" Biglari's acquisition of the Upstream Assets.  (*Id*.)  However, merely listing these events together does not make them a

9

single transaction.

These events make up two separate transactions: first, Defendant's effort to acquire the Upstream Assets with another entity before his joint venture with Biglari, and second, Biglari's ultimate acquisition of the Upstream Assets. Although both transactions involved Defendant and the Upstream Assets, Plaintiffs admit that Defendant contacted Biglari after the former transaction failed, (Am. Compl. 1), and that he was never a party to the latter transaction, (*id*. ¶ 14). Plaintiffs try to link the two transactions together by asking me to draw the inference that "[Defendant's] meeting in New York [in connection with the first transaction] was part of the [due diligence] that he ultimately presented to Biglari in pursuit of [the second transaction]." (MTD Opp. 12.) Plaintiffs' factual basis for this inference is that Defendant states, in his affidavit, that his meeting with Pertuz in New York "occurred before [he] presented [his] due diligence to Biglari in March 2019 and raised the possibility of a joint venture[.]" (Def. Aff.[6] ¶ 9.) In other words, Plaintiffs ask me to infer, from the fact that the meeting happened before Defendant presented his due diligence to Biglari, that the meeting was part of Defendant's presented due diligence. The problem with the leap that Plaintiffs ask me to make is that when Defendant met with Pertuz, he did so in connection with an anticipated joint venture with another entity, not Biglari. (Am. Compl. ¶ 12.) The fact that Defendant may have used information he gathered in connection with the failed transaction later in his dealings with Biglari does not mean there is just one transaction. Plaintiffs do not allege that Defendant was gathering the due diligence in anticipation of attempting to transact business with Biglari. In any event, even if I accept Plaintiffs proffered inference as reasonable, *see Dorchester Fin. Sec, Inc.*, 722 F.3d at 84 ("All pleadings and affidavits are to be construed in the light most favorable to the plaintiff."

---

[6] *See supra* Note 4.

(alteration marks omitted)), and, at the same time, assume that Defendant's due diligence indeed played some role in Biglari's decision to purchase the Upstream Assets (which Plaintiffs do not plead), the two transactions were still separate and distinct. They involve different parties, two completely different attempted joint ventures, and share no legal or contractual connections. Plaintiffs' factual allegations, therefore, do not support my treating and analyzing the two transactions together as one single transaction under C.P.L.R. § 302(a)(1).

Therefore, I will analyze the two transactions separately: first, Defendant's communication with HPS and subsequent meeting with the HPS representative Pertuz in New York; and second, Biglari's acquisition of the Upstream Entities. I find that neither transaction is sufficient to establish personal jurisdiction.

a. Defendant's Meeting with HPS

Plaintiffs allege that in 2018, HPS contacted Defendant about their intention to sell the Upstream Assets, which were at the time registered in New York. (Am. Compl. ¶ 12.) Subsequently, Defendant came to New York for a meeting with the HPS representative Pertuz about the prospective purchase. (*Id.*; *see also* Def. Aff. ¶ 9.) The Upstream Assets were marketed by Seaport Global, an investment bank registered and headquartered in New York. (Am. Compl. ¶¶ 8, 13; *see also* MTD Opp. 4.)

Plaintiffs contend that "[b]y attending the New York meeting, and through his contact with New York-based HPS and Seaport Global, Defendant has directed and conducted sufficient business activity within New York to justify this Court's personal jurisdiction over him." (*Id.* 11.)[7] Even assuming the communication with HPS and one single meeting in New York is

---

[7] On the other hand, Defendant states, and Plaintiffs do not challenge, that HPS contacted Defendant from its Houston Office. (Def. MTD-1 ¶ 7; *see also* Def. Aff. ¶¶ 3, 6.)

11

sufficient to hale Defendant before a court in New York—which, as discussed below, it is not—that does not warrant my exercising jurisdiction in this case, because Plaintiffs' cause of action does not "arise out of" the transaction involved in this meeting. *Fashion Fragrance & Cosmetics*, 2003 WL 342273, at *4. The purported contract dispute alleged in Plaintiff's Amended Complaint arises out of Defendant's pursuit of joint venture with Biglari. Defendant's communications with HPS, for reasons explained above, are part of a different failed transaction. As Plaintiffs admit, the transaction related to Defendant's initial communication and meeting with HPS ceased before Defendant even contacted Biglari about the opportunity to purchase the Upstream Assets. (MTD Opp. 12, quoting from Def. Aff. ¶ 9.) The connection between Defendant's dispute with Biglari and Defendant's communications and meeting with HPS in relation to a previous, different deal is at best "fortuitous." *See Walden*, 571 U.S. at 286. Hence, Plaintiffs fail to allege an "articulable nexus" or a "substantial relationship" between their cause of action and Defendant's initial communication with HPS and subsequent meeting with HPS in New York. *See Fashion Fragrance & Cosmetics*, 2003 WL 342273, at *4.

b. Biglari's Acquisition of the Upstream Assets

Biglari's acquisition of the Upstream Assets also fails to establish jurisdiction because, again as Plaintiffs admit, Defendant was not part of the acquisition. (Am. Compl. ¶ 14.) Biglari Holdings Inc. purchased the Upstream Assets through its wholly owned subsidiary Southern Oil Inc. (*Id*. ¶10.) Although Biglari at first pursued the acquisition together with Defendant, he eventually acquired the assets without Defendant's participation. (*Id*. ¶ 13.) In fact, other than Defendant's initial collaboration with Biglari and his current effort to "insert himself into and benefit from [the Upstream acquisition]," (MTD Opp. 9; *see also* Am. Compl. ¶¶ 14–19), Plaintiffs fail to allege any facts regarding Defendant's involvement in Biglari's acquisition of

12

the Upstream Assets.

Moreover, these facts do not support the conclusion that Defendant "transacted" business in New York. Plaintiffs contend that "[t]he fact that Defendant did not himself live in New York, but instead transacted with New York-based marketers and sellers regarding New York-registered assets from afar, is inconsequential" because "[c]ourts have routinely held that there is enough of a connection for the exercise of long-arm jurisdiction where a defendant directs action in New York from afar." (MTD Opp. 10.) Plaintiffs' assertion misses the mark, because Defendant's activities still have to meet the minimum requirement that he "purposefully avail[ed] [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Best Van Lines, Inc.*, 490 F.3d at 246 (internal quotation marks omitted). The only connections Plaintiffs allege between this transaction and New York are (1) the Upstream Assets were registered in New York, (2) HPS, then the owner and seller of the Upstream Assets, was registered and headquartered in New York, and (3) the Upstream Assets were marketed by Seaport Global, a company registered and headquartered in New York. Plaintiffs never allege that Defendant sought to "consummate a New York transaction or invoke the State's laws." *See Suber v. VVP Servs., LLC*, No. 20-CV-08177 (AJN), 2021 WL 4429237, at *4 (S.D.N.Y. Sept. 27, 2021) (quoting *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 509 (2007)) (alteration marks omitted). Nor do Plaintiffs allege that the deal was negotiated in New York, was entered into in New York, or was governed by New York law.[8] The fact that the Upstream Assets, HPS, or Seaport Global were registered in New York adds nothing to the equation, because none of these facts demonstrate that Defendant sought "the privilege of conducting

---

[8] On the other hand, Defendant states, and Plaintiffs do not dispute, that the purchase agreement entered into by Southern Oil Inc. and HPS was negotiated and closed in Texas. (Def. Aff. ¶ 18.)

13

activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc.*, 490 F.3d at 246–48 (quoting *Denckla*, 357 U.S. at 253); *see also Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) ("'[T]he relationship must arise out of contacts that the defendant <u>himself</u> creates with the forum State,' not 'contacts between the plaintiff (or third parties) and the forum State.'") (quoting *Walden*, 571 U.S. at 284).[9]

In fact, courts in New York have "declined to find that a business transaction occurred based solely on limited communications between an out-of-state defendant and a [party] in New York for the narrow purpose of discussing services to be provided outside of the state." *Suber*, 2021 WL 4429237, at *4 (collecting cases); *see, e.g.*, *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) ("[W]e have held that merely telephon[ing] a single order to New York requesting a shipment of goods to another state . . . [or] communications and shipments sent here by an out-of-state doctor serving as a 'consultant' to plaintiff's New York physician do not support CPLR 302 (a) (1) jurisdiction." (internal citations omitted)).  Specifically, in *Suber*, one of my colleagues found that an out-of-state company's "recruitment activities of hiring [a New York] recruitment firm, conducting an initial phone interview with [a New York interviewee], and permitting her to work remotely [in New York] for a brief period prior to moving do not constitute a business transaction for the purposes of § 302(a)(1)." *Suber*, 2021 WL 4429237, at *4.

Therefore, because Defendant neither was a party to the purchase of the Upstream Assets nor otherwise "transacted" business in New York in relation to this deal, his connection to New

---

[9] Consequently, as I explain below, the exercise of jurisdiction over Defendant does not meet the due process requirement due to this lack of purposeful availment.  *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (plurality opinion); *see also Best Van Lines, Inc.*, 490 F.3d at 247.

York is too attenuated to support a finding of jurisdiction.

### c. The Two Transactions Together

Lastly, I briefly note that even if I were to consider the two transactions above as one single transaction, Plaintiffs' allegations would still fall short of establishing jurisdiction under C.P.L.R. § 302(a)(1). As I have explained, there is no showing that Defendant "purposefully availed himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws" in his attempted joint venture with Biglari. As to his previous joint venture with the third entity, there is no such showing either. Plaintiffs point to Saberioon's one meeting with Pertuz in New York, but they do not allege that this meeting resulted in any form of agreement or that Saberioon later returned to New York for further negotiations.[10] Therefore, this purported "single transaction" would not have had any material connection with New York to justify exercising long-arm jurisdiction over Defendant.

### 2. Due Process

"If jurisdiction is statutorily impermissible, then the Court need not reach the [constitutional analysis]," and must dismiss the lawsuit. *Best Van Lines, Inc.*, 490 F.3d at 244. Since I find that there is no statutory basis for exercising jurisdiction over Defendant, my analysis could end here. However, even if jurisdiction was statutorily permissible, Plaintiffs' assertion of jurisdiction would not have passed the constitutional test.

Under the due process analysis, defendants must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

---

[10] On the other hand, Defendant states, and Plaintiffs do not dispute, that (1) HPS contacted Defendant from its Houston office, which "manages substantially all of HPS's oil and gas portfolio," and the communications occurred in Houston, (Def. MTD-1 ¶ 7; *see also* Def. Aff. ¶ 6), and (2) Defendant has not returned to New York since that meeting with Pertuz, (Def. MTD-1 ¶ 10; *see also* Def. Aff. ¶ 10).

"Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co.*, 480 U.S. at 109 (quoting *Burger King Corp.*, 471 U.S. at 475). As I have explained, Plaintiffs have not made "legally sufficient allegations," *Dorchester Fin. Sec, Inc.*, 722 F.3d at 84, that Defendant had "purposefully avail[ed] [him]self of the privilege of conducting activities within [New York]," *Asahi Metal Indus. Co.*, 480 U.S. at 109. Consequently, I find that Defendant's contact with New York would not have met the due process requirement.

### B. *Defendant's Motion to Dismiss Under Rule 12(b)(6)*

Under New York law, "a corporation is a creature of the law, endowed with a personality separate and distinct from its owners and . . . the dual personality of parent and subsidiary is not lightly disregarded." *Bross Utils. Serv. Corp. v. Aboubshait*, 618 F. Supp. 1442, 1445 (S.D.N.Y. 1985) (internal quotation marks omitted). "It is black-letter law that one corporation cannot assert an affiliate's legal rights," *Clarex Ltd. v. Natixis Secs. Am. LLC*, No. 12 Civ. 0722(PAE), 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012), and "the fact of corporate affiliation [alone] does not give an entity the right to bring a suit in its own name for an injury to an affiliate," *AEP-PRI Inc. v. Galtronics Corp.*, No. 12 CIV. 8981 PAE, 2013 WL 4400833, at *8 (S.D.N.Y. Aug. 13, 2013) (citing *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10 CIV. 5762 PAE, 2013 WL 489020, at *7 (S.D.N.Y. Feb. 8, 2013), *vacated and remanded on other grounds*, 801 F.3d 92 (2d Cir. 2015)).

Here, Plaintiffs fail to state a claim for two reasons: first, they do not allege a dispute between Defendant and themselves; second, they cannot bring a suit in their own names for an alleged injury to their parent company.

Plaintiffs ask me to "[d]eclare that Plaintiffs have not breached any purported contract or quasi-contract between Plaintiffs and Defendant." (Am. Compl. 9.) However, the only purported contract Plaintiffs have alleged was between Defendant and Biglari. (*Id*. ¶¶ 14-19.) Defendant's email, which Plaintiffs referred to as evidence of the dispute, was sent to the attorneys of Biglari. (*Id.* ¶ 15; *see also id*. Ex. A.) Biglari is the CEO and chairperson of Biglari Holdings Inc., (*id.* ¶ 9) and Defendant was alleging equity and contractual rights in Southern Oil Inc. (*id.* Ex. A); neither Southern Oil of Louisiana Inc. nor Southern Oil of Louisiana LLC was directly involved in this purported contract dispute. Plaintiffs' Amended Complaint "fails to allege or otherwise establish that Saberioon even contends that a contract between himself and Plaintiffs exists." (Def. MTD-3[11] ¶ 12.)

On the other hand, Plaintiffs have presented factual allegations of a dispute between Defendant and Biglari and/or Southern Oil Inc. However, Plaintiffs cannot assert the rights of either Biglari, Biglari Holding Inc., or Southern Oil Inc. to seek declaratory relief, even if Plaintiffs themselves are wholly-owned subsidiaries of Southern Oil Inc., and indirectly, wholly-owned subsidiaries of Biglari Holding Inc. *See Clarex*, 2012 WL 4849146, at *6. Plaintiffs argue that "[because] Southern Oil Inc. owns nothing other than [Plaintiffs], based on the alleged agreement, [Defendant] would, among other things, effectively become CEO of, and have a 20% equity interest in [Plaintiffs]." (Am. Compl. ¶ 14.) However, that fact does not mean Plaintiffs and their parent companies can be treated the same for purposes of bringing a legal claim. "[I]t may be that [Southern Oil Inc.] and [Plaintiffs] can be conflated or viewed as agents of one another for certain evidentiary and other purposes, [but] when it comes to bringing a claim the

---

[11] "Def. MTD-3" refers to Defendant's memorandum of law in support of the motion to dismiss under Rule 12(b)(6) filed on January 24, 2020, (Doc. 16-3).

17

corporate forms must be respected and, absent an assignment or the like (not present here), only a company that itself suffered an injury can sue on that claim." *Motorola Credit Corp. v. Uzan*, 274 F. Supp. 2d 481, 495 (S.D.N.Y. 2003), *aff'd in part, vacated and remanded on other grounds in part*, 388 F.3d 39 (2d Cir. 2004).

Therefore, Plaintiffs failed to state a claim for declaratory judgement under Rule 12(b)(6).

### V.     Conclusion

For the foregoing reasons, Defendant's motions to dismiss for lack of personal jurisdiction and motion to dismiss for failure to state a claim are hereby GRANTED. Accordingly, Defendant's motion to dismiss for improper venue is hereby DISMISSED as moot. Additionally, Plaintiffs' letter motion for conference filed on September 28, 2021, (Doc. 36), is hereby DENIED. The Clerk's office is directed to terminate the open motions on the docket.

SO ORDERED.

Dated: November 8, 2021
         New York, New York

                                    Vernon S. Broderick
                                    United States District Judge